```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                   06-CV-2237(JMR/FLN)
```

Matthew T. Zilhaver and        )
Sascha Linn,                   )
Individually and               )
on behalf of all others        )
similarly situated             )
                               )         ORDER
        v.                     )
                               )
UnitedHealth Group, Inc.,      )
L. Robert Dapper, James        )
A. Johnson, William G.         )
Spears, Mary O.                )
Mundinger, William             )
W. McGuire, and Stephen        )
J. Hemsley                     )

The Court considers plaintiffs' unopposed motions seeking settlement approval, class certification, and attorneys' fees. For the reasons stated herein, the settlement is approved, class certification is granted, and attorneys' fees are awarded at a reduced sum. The Court also awards each named plaintiff a compensation sum.

I. Background

Between October 2002, and September 2005, Matthew Zilhaver worked for PacifiCare Health Systems, Inc. ("PacifiCare"). He participated in its 401(k) retirement savings plan. In December 2005, UnitedHealth Group, Inc. ("UnitedHealth") acquired PacifiCare and merged Pacificare's 401(k) plan into its own. This merger rolled Zilhaver's savings into UnitedHealth's 401(k) savings plan ("the Plan"). Zilhaver cashed out his retirement savings from the

UnitedHealth Plan in May 2006. He was not a Plan participant when plaintiffs filed their complaint.

Plaintiff Sascha Linn worked for UnitedHealth. Between December 21, 2005, and May 24, 2006 (the "class period"), he participated in UnitedHealth's Plan - a qualified employee benefit under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1002(3) and 1002(2)(A) ("ERISA"). As a Plan participant, Linn voluntarily contributed to an individual savings account. He continued as a Plan member when this suit began.

Both Zilhaver and Linn seek to represent a class of Plan participants. According to Zilhaver and Linn, class members were deprived of an opportunity to invest their retirement savings in shares which "would have yielded better results and a significant increase in [their] retirement savings." (Compl. ¶¶ 9-9A.) They claim, among other things, UnitedHealth's stock was overvalued, because improperly backdated stock options were issued to certain UnitedHealth officers and directors.

During the class period, Plan fiduciaries allowed participants to maintain investments in UnitedHealth stock. The fiduciaries allegedly warned participants that if they put their retirement savings into alternative investments, they would not be allowed to reinvest in company stock. (Compl. ¶ 33.) Plaintiffs claim this policy forced them to keep their retirement funds in UnitedHealth stock.

2

On March 18, 2006, the <u>Wall Street Journal</u> revealed UnitedHealth's practice of backdating stock options. The article opened the floodgates to this and related litigation. Plaintiffs claim UnitedHealth's stock price fell as a result of these disclosures, lawsuits, and investigations by the Securities and Exchange Commission ("SEC").

Plaintiffs filed this class action alleging the Plan's fiduciaries failed to disclose material facts and negligently misrepresented information which would have allowed participants to make informed decisions concerning their retirement savings. Plaintiffs also accused a number of individual board members of failing to properly appoint and monitor the Plan's fiduciaries. Ultimately, plaintiffs claim defendants encouraged imprudent investment in UnitedHealth stock artificially inflated by the company's options backdating practices.

Defendants replied, seeking dismissal and summary judgment arguing, among other things, that plaintiff Matthew Zilhaver lacked standing, that plaintiff Sascha Linn had released his claims against UnitedHealth, and denying they were ERISA fiduciaries. On March 18, 2008, the parties attempted to mediate their claims before a former federal magistrate judge without success. On March 31, 2008, this Court denied defendants' motions to dismiss and for summary judgment.

Thereafter, plaintiffs moved to certify a class of all persons participating in the Plan during the class period. Prior to the hearing on this motion on November 7, 2008, the parties announced a settlement achieved with the assistance of a former federal judge. Plaintiffs advised the Court they agreed to settle only after extensive discovery closely coordinated with that taken in the UnitedHealth PSLRA case (06-CV-1691).

Under the proposed settlement, defendants would pay $17 million into a common fund, to be distributed according to each individual Plan participant's losses. There would be no payment to the defendants in this case; Section 16(b) UnitedHealth officers; or to any class member whose potential recovery was less than $10.00.

This Court granted preliminary settlement approval on February 19, 2009. Notices were mailed to 23,474 class members on February 27, 2009. The notice was also posted on the website of Stull, Stull & Brody, plaintiffs' class counsel, and on AB Data's website. The notice set April 17, 2009, as the deadline for filing objections to the settlement. No objections were filed. Accordingly, plaintiffs seek final settlement approval, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P"); class certification [Docket No. 138]; and attorneys' fees [Docket No. 141].

II. Discussion

   A. Settlement Approval

A court approving a class action settlement must find it to be "fair, reasonable, and adequate," and entered into without fraud or collusion among the parties. Van Horn v. Trickey, 840 F.2d 604, 606 (8th Cir. 1988). Courts are guided by four factors: (1) the "strength of the case for plaintiffs on the merits, balanced against the amount offered in the settlement"; (2) the defendants' financial situation; (3) the expense and complexity of continued litigation; and (4) opposition to the settlement. Grunin v. Int'l House of Pancakes, 513 F.2d 114, 124 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975). Here, the Court's analysis of the four factors weighs in favor of settlement approval.

      1. Strength of Plaintiffs' Case Compared to Settlement

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." Van Horn, 840 F.2d at 607. This was a complex case premised upon new theories, leaving the outcome far from certain. The proposed settlement adequately balances these competing concerns.

Plaintiffs maintain they could have shown defendants "were or should have been aware of" UnitedHealth's stock problems. They recognize, however, defendants would argue there "were no material

5

corrective disclosures regarding stock option granting." (Pls.' Mem. Supp. Settlement Approval 10.) Defendants could also argue any backdating had a limited impact on individual shares. As such, UnitedHealth stock - which had dramatically increased in price until the disclosures - was never an imprudent investment.

Finally, defendants challenged plaintiffs' ability to prove compensable damages. Specifically, the parties hotly contested the very means of damage calculations. While plaintiffs claimed maximum damages ranging from $94 to $105 million, defendants argued plaintiffs suffered no damages at all. The $17 million settlement - an amount decided upon through arms-length negotiations - adequately balances these positions.

### 2. Defendants' Financial Situation

Defendants are well-able to pay the $17 million cash settlement. See Petrovic v. AMOCO Oil Co., 200 F.3d 1140, 1152 (8th Cir. 1999) (the fact that a company could pay more, standing alone, does not render a settlement inadequate). Plaintiffs inform the Court the settlement fund represents $3.95 per share (gross) - an amount comparing favorably to those achieved in similar cases. (Pls.' Mem. Supp. Settlement Approval 12.) Were the sum to be evenly divided among 24,000 class members, the settlement would pay each $700. These calculations support the conclusion of the settlement's adequacy.

### 3. Expense and Complexity of Further Litigation

While further litigation always represents an additional

expense, the complexity of this case strongly favors approval.

Trial of this case would have been lengthy, complex, and costly. Both sides appeared at the May 8, 2009, hearing girded by a phalanx of attorneys undoubtedly prepared to work all hours in preparation for trial. The trial would likely have lasted at least two weeks, as parties called numerous experts and witnesses to the stand.

Even if plaintiffs had received a trial verdict, appeals were a virtual certainty. Settlement represents a speedy and effective way for the parties to resolve their dispute. See In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 933 (8th Cir. 2005) (affirming settlement where the case would "likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing"). Under the proposed settlement, plaintiffs are assured a recovery.

### 4. Settlement Opposition

The Court also considers that after notice to over 23,000 class members, there has not been a single objection. Without any class objection, this factor strongly supports settlement approval.

### B. Allocation Approval

A court must also look beyond the settlement documents and review the plan of allocation to assure it is "fair and reasonable." Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 964 (3d Cir. 1983). This fund's proceeds will be distributed among class members in proportion to their calculated losses.

Plaintiffs' counsel note recovering parties need not prove their claims; the Plan's records dictate an accurate fund distribution.

There is no allocation to defendants and Section 16(b) UnitedHealth officers, or for class members whose payout would be less than $10.00. The Court finds these exclusions reasonable. In particular, the Court approves excluding those with minimal losses where costs of administration become disproportionate. There is no opposition to the allocation plan. Accordingly, the Court finds the proposed distribution plan is fair and reasonable.

C. Class Certification

Beyond requesting settlement approval, plaintiffs ask the Court to certify the class for settlement. Under Fed. R. Civ. P. 23, a class action may be certified if it meets Rule 23(a)'s prerequisites and is qualified under Rule 23(b).

1. Rule 23(a)

Rule 23(a) permits class certification only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The proposed class satisfies these terms. A class exceeding 20,000 clearly meets the numerosity standard. While Rule 23(a)(2) requires commonality, "[t]he rule does not require that every question of law or fact be common to every member of the class." Paxton v. Union Nat'l Bank, 688 F.2d 552, 561 (8th Cir. 1982).

8

Here, there are multiple questions of law and fact common to the proposed class. These include whether defendants breached fiduciary duties common to the class; the extent of financial injury to Plan participants, if any were injured at all; and whether defendants were Plan fiduciaries. The lead plaintiffs share these common questions with the proposed class ensuring adequate class member representation. See Fed. R. Civ. P. 23(a)(3) ("[C]laims or defenses of the representative parties are typical of the claims or defenses of the class.").

Fed. R. Civ. P. 23(b)(1)(A) requires plaintiffs to demonstrate a risk that separate actions could result in "inconsistent or varying adjudications with respect to individual class members." Alternatively, they may show the risk of "adjudications with respect to individual members of the class that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

These plaintiffs satisfy both requirements. Certification eliminates the risk of multiple and varying adjudications by individual class members. As other courts have noted, "[p]alpably, inconsistent or varying adjudications would be intolerable for the employees of the same employee benefit plans." Kolar v. Rite Aid Corp., No. 01-1229, 2003 U.S. Dist. LEXIS 3646, *9 (E.D. Pa. 2003) (citations omitted). Given that plaintiffs' claims seek "[p]lan-

9

wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief." Jones v. NovaStar Fin., Inc., 257 F.R.D. 181, 193 (W.D. Mo. 2009).

Finally, the Court concludes class counsel provided adequate representation to the class. Counsel's investigation and identification of plaintiffs' potential claims; experience in handling similar matters; demonstrated knowledge of applicable law; and commitment to advancing resources for adequate class representation amply met the requirements in Rule 23(g).

D. Application for Attorneys' Fees

Plaintiffs seek an order pursuant to Rule 23(e) and (h), awarding their counsel 23.5% ($4,000,000) of the $17 million settlement as attorneys' fees. In addition, plaintiffs' counsel seek reimbursement for litigation expenses and case contribution awards for the named plaintiffs. Plaintiffs have calculated these attorneys' fees using a percentage-of-the-fund approach. They argue this method is increasingly preferred in "awarding attorneys' fees in common fund cases." (Pls.' Mem. Supp. Award 2.) There is no opposition.

A fee award is proper, but the Court finds the percentage suggested by plaintiffs' counsel unreasonable. The Court opts for an attorneys' fee award of 14% of the common fund, or a total award of $2,380,000. The Court further apportions this sum between the two applicant law firms as follows: 2.2% of the award, or $52,366.40, to Krause & Hovland, and 97.8%, or $2,327,633.60, to

10

Stull, Stull & Brody. This fee split reflects the division of labor between the two firms. See Manual for Complex Litigation, § 4.11 (4th ed. 2004) ("The court must distribute the fund among the various plaintiffs' attorneys . . .").

An award of attorneys' fees is committed to the sound discretion of the district court. Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1157 (8th Cir. 1999). A court exercises this discretion, illuminated by two methods in analyzing fee requests. Under a "percentage of the benefit" approach, courts calculate a fee award equal to a fraction of the common fund. See Walitalo v. Iacocca, 968 F.2d 741, 747-48 (8th Cir. 1992). Under the "loadstar" method, the court multiplies the lawyers' reasonable hours expended by a "reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." Johnston v. Comerica Mortgage Corp., 83 F.3d 241, 245 (8th Cir. 1996). The Eighth Circuit Court of Appeals acknowledges each method's "distinct attributes which make them suitable for particular types of cases." Id. at 245. It cites the Third Circuit Task Force Report which commended the "percentage of the benefit method be employed in common fund situations." Id.

The Court opts for the percentage of the benefit method here, while recognizing this method imposes upon it a special fiduciary responsibility. In re Xcel Energy, Inc., 364 F. Supp. 2d 980, 992 (D. Minn. 2005). The Court, itself, must ensure the allocation

between class and class counsel is fair and reasonable. In fulfilling this responsibility, the Court elects to cross-check its calculations and test the "reasonableness of the attorney fees by comparing the percentage award to the lodestar." Id. at 993.

The Eighth Circuit has not formally established fee-evaluation factors, but it has approved consideration of the twelve factors set forth in Johnson v. Georgia Highway Express, 488 F.2d 714, 719-20 (5th Cir. 1974). See, e.g., Easley v. Anheuser-Busch, Inc., 758 F.2d 251, 265 (8th Cir. 1985); Allen v. Amalgamated Transit Union, 554 F.2d 876, 884 (8th Cir. 1977). These include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) requisite skill to perform the legal service properly; (4) preclusion of other employment by the attorney due to case acceptance; (5) customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) the attorneys' reputation, experience, and ability; (10) the case's undesirability; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

All twelve Johnson factors seldom apply in each case, and courts exercise their discretion in selecting factors for review in a particular case. See Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999) ("[I]t is not necessary for district courts to examine exhaustively and explicitly . . . all the factors that are

relevant to the amount of a fee award.").

Here, plaintiffs' counsel suggest the Court consider "(1) the benefit conferred on the class; (2) the risks assumed by counsel; (3) the difficulty and novelty of the legal and factual issues in the case, including whether plaintiffs were assisted by a relevant governmental investigation; (4) the skill of the lawyers; (5) the time and labor involved; (6) the reaction of the class; and (7) a comparison of the requested fee to the percentages awarded in similar cases." (Pls.' Mem. Supp. Award 4 (citing In re Xcel Energy, Inc., 364 F. Supp. 2d at 993).) The Court finds these factors congenial.

### 1. The Benefit to The Class

Plaintiffs' counsel obtained a $17 million cash benefit for plaintiffs. "In awarding attorney fees, the most critical factor is the degree of success obtained." Wheeler v. Mo. Transp. Comm'n, 348 F.3d 744, 754 (8th Cir. 2003) (quotations omitted). This substantial sum was achieved through plaintiffs' counsel's efforts during three years of litigation, and represents a sizable recovery for class members.

### 2. Risks Assumed by Counsel

This being a contingent fee case, plaintiffs' counsel assumed a financial risk. In the Eighth Circuit, courts must take "into account any contingency factor" where plaintiffs' counsel assumes a "high risk of loss." Brissette v. Heckler, 784 F.2d 864, 865-66 (8th Cir. 1986). Plaintiffs' counsel assumed the risk this case

13

would "produce no fee," and courts see fit to reward such gambles. Id.

Plaintiffs' counsel point to particular risks here: they claim plaintiffs faced "significant difficulties of proving damages" in the face of defendants' denial of having invested imprudently. (Pls.' Mem. Supp. Award 6). This cannot, however, be shocking. Such a response was a virtual certainty. There was, of course, a risk of dismissal or summary judgment, and a possibility plaintiffs could have lost at trial, or any verdict could have been lost on appeal.

While risks certainly existed, they exist in most difficult cases. The Court does not consider these risks lie far beyond those encountered in any complex case. Indeed, the merits of this case "were promising from the outset." See In re Dreyfus Aggressive Growth Mut. Fund. Litig., No. 98-CV-4318, 2001 U.S. Dist. LEXIS 8418, at *19 (S.D.N.Y. June 22, 2001) (discounting plaintiffs' counsel's contingency risk where the merits of a case were promising from the outset). Beginning with the Wall Street Journal's expose, UnitedHealth's backdating of options became common knowledge, and UnitedHealth faced an onslaught of litigation as a result. In sum, there was a reasonably-vulnerable defendant, but real risks remained. The sum awarded should reflect both.

### 3. Difficulty and Novelty of Legal Issues

Plaintiffs' counsel are experienced class action litigators.

14

Even so, this case presented complex legal and factual issues. Class counsel analyzed discovery prior to their mediation and settlement discussions. They considered whether investors could claim a presumption of prudence and a means of proving damages where plan participants purchased no stock during the class period. Here again, however, their work was eased by coordination with the related PSLRA case – a factor militating for a reduction in the percentage-of-the-fund recovery.

    4. Skill of All Counsel

Class counsel are skilled. They drew upon a particular expertise in ERISA class action settlements. Other courts have noted counsel's ability to "persuade reluctant and determined defendants to part with settlement dollars well above those expected." (Mills Decl. Ex. A) In sum, counsel's presence added credibility to the class claims.

Matching their own skill, class counsel faced competent lawyers on the other side. Counsel for defendants included Dorsey & Whitney, LLP; Groom Law Group; Flynn, Gaskins & Bennett, LLP; and Latham & Watkins LLP – well-regarded defense firms with their own extensive experience handling similar matters. Faced with formidable opponents, all parties worked hard to earn their fees.

    5. Time and Labor Expended

Plaintiffs' counsel claim hours worked on this case over the

past three years total 5,618.97.[1] Counsel "moved the case along expeditiously," supporting an appropriate recognition of their time and labor. In re Xcel Energy, Inc., 364 F. Supp. 2d at 996. The Court's lodestar cross-check will further account for plaintiffs' counsel's time and labor expended.

      6. Class Reaction

Three has been no objection to plaintiffs' counsel's requested fees.

      7. Comparison to Other Fee Percentages

The Court finds a 14% fee award falls well within the range of that awarded in similar settlements. In re Dreyfus Aggressive Growth Mut. Fund. Litig., 2001 U.S. Dist. LEXIS at *2 (awarding fees amounting to 15% of the common fund where 30% constituted the "far end" of reasonableness); In re Fine Host Corp. Sec. Litig., No. 3:97-CV-2619, 2000 U.S. Dist. LEXIS 19367, at *17 (D. Conn. Nov. 8, 2000) (awarding 17.5% of the class common fund). Although courts have certainly awarded higher and lower fee awards, in balancing the appropriate factors, a 14% award compares favorably with others.

      8. Lodestar Cross-Check

Finally, the Court cross-checks its proposed award using the lodestar method. See In re Xcel Energy, Inc., 364 F. Supp. 2d at

---

[1] The Court is somewhat astonished at the prospect of billing "accuracy" measured in hundredths of hours - representing 36 second increments.

16

1002 (applying a lodestar cross-check in a percentage of the benefit award situation). Plaintiffs' counsel, Stull, Stull & Brody and Krause & Hovland billed 5505.72 and 113.25 hours which translates to suggested lodestars of $3,009,985.65, and $36,736.25, respectively. They then urge a multiplier of 1.3 as reasonable, resulting in an award of approximately $4 million. While their calculations are arithmetically accurate, the Court finds counsel's hourly fees, approaching $1,000, are far in excess of those normally charged in the Twin Cities area.

Accordingly, the Court adjusts the lodestar – Stull, Stull & Brody attorneys who bill at rates exceeding $600 an hour will be capped at $500 an hour. Those billing under that sum will be capped at $200 an hour. Additionally, the Court will not approve paralegal fees above $100 an hour. The Court does not adjust the fees submitted by Krause & Hovland; their requested $325 hourly rate is reasonable, and fairly represents the Twin Cities market.

Applying these adjusted rates, and counsel's requested 1.3 multiplier, the lodestar method results in an award of approximately $2,171,000, or 12.77% of the fund. This amount is in reasonable accord with the Court's decision to award counsel 14% of the settlement, as well as its decision to apportion the total fee awarded between Krause & Hovland and Stull, Stull & Brody.

E. <u>Counsel's Expenses</u>

"The common fund doctrine provides that a private plaintiff,

17

or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation . . . ." In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 820 n.39 (3d Cir. 1995). Plaintiffs' counsel has detailed its expenses. The Court finds them reasonable and necessary. Accordingly, counsel's expenses of $212,629.01 are reimbursed.

 F. Case Compensation Awards

The Eighth Circuit has noted "relevant factors in deciding whether incentive award to named plaintiff . . . [are] warranted." Koenig v. U.S. Bank, 291 F.3d 1035, 1038 (8th Cir. 2002). Courts should consider "actions plaintiff took to protect class's interests, [the] degree to which the class has benefitted from those actions, and amount of time and effort plaintiff expended in pursuing litigation." See id. (citing Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Applying these factors, the Court finds named plaintiffs Matthew Zilhaver and Sascha Linn are entitled to individual awards of $15,000. Plaintiffs' counsel note Zilhaver and Linn were "the only Plan participants to step forward and commence or intervene in this suit." (Pls.' Mem. Supp. Award 18.) As named plaintiffs, they bore the risks of counterclaim or collateral attack, and consulted with class counsel throughout the suit. Individual awards of $15,000 are appropriate.

III. Conclusion

1. Plaintiffs' motions for final approval of the settlement, class certification, and approval of attorneys' fees [Docket No. 138 & 141] are granted.

2. Krause & Hovland is awarded $52,366.40 in attorneys' fees.

3. Stull, Stull, & Brody is awarded $2,327,633.60 in attorneys' fees.

4. Expenses are awarded in the amount of $212,629.01.

5. Each named plaintiff is awarded the sum of $15,000.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 20, 2009

                        s/ James M. Rosenbaum
                        JAMES M. ROSENBAUM
                        United States District Judge